# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

DOUGLAS MIHALIK
    Plaintiff,

    v.

                         Case No. 3:04cv258/RV/EMT

EXPRESSJET AIRLINES d/b/a
CONTINENTAL EXPRESS,
    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, proceeding pro se, initiated this action against Defendant for Defendant's alleged violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 612-634 (Doc. 1). Plaintiff filed an amended complaint on December 20, 2004 (Doc. 10). Now pending is Defendant's Motion for Summary Judgment, with supporting documents (Docs. 37, 38, 39). Plaintiff responded in opposition to the motion (Docs. 51, 52, 53 ). Upon consideration of the materials submitted by the parties and for the reasons stated below, it is the opinion of the undersigned that Defendant's motion for summary judgment should be granted.

## I.      BACKGROUND

In Plaintiff's amended complaint, Plaintiff appears to assert claims of employment discrimination based upon theories of disparate treatment, disparate impact, and/or discriminatory hostile work environment (Doc. 10). Previously, however, this cause was before the court on Defendant's motion for judgment on the pleadings (Doc. 21). Although the motion was denied, the court found that Plaintiff failed to properly allege claims based on either disparate impact or discriminatory hostile work environment theories; however, liberally construing Plaintiff's amended

complaint, the court found that it states a cause of action based on a theory of disparate treatment (Docs. 35, 40). Therefore, Defendant's motion for summary judgment properly addresses the only surviving claim, Plaintiff's disparate treatment claim, as will this Report and Recommendation.

At the time of the events giving rise to this cause of action, Plaintiff was employed with Defendant ExpressJet Airlines as a pilot (Doc. 10 ¶ 6; Doc. 14 ¶ 6). On February 20, 2003, George Semak, Senior Director of Flight Operations for ExpressJet Airlines, suspended Plaintiff from active flight duties pending the determination of a fitness for duty examination (*see* Doc. 10 ¶ 17; Doc. 39 ¶¶ 3, 13; Doc. 52, Ex. H). The fitness for duty process was completed in May 2003, and Plaintiff was found fit for duty (Doc. 10 ¶ 37; Doc. 14 ¶ 37; Doc. 52 ¶ 35). However, Plaintiff immediately and voluntarily took sick leave, then applied for and received approval for long term disability leave and never returned to flight status with ExpressJet (Doc. 14 ¶ 37).

According to Mr. Semak, Plaintiff's suspension was based upon complaints received from ExpressJet's employees regarding Plaintiff, which "raised serious concerns . . . about [Plaintiff's] fitness to serve as a pilot of ExpressJet's aircraft" (Doc. 39 ¶¶ 5-12). Mr. Semak further states that "this temporary change of duty schedule did not affect [Plaintiff's] compensation or other employment benefits." (Doc. 39 ¶ 13). Plaintiff denies that his suspension was with pay (Doc. 52 ¶¶ 29-30; Doc. 53 at 2) and further asserts that the coworker complaints against him are false and that Mr. Semak was aware of their falsity and used the complaints as a pretext for initiating termination proceedings[1] against him (Doc. 53 at 3). [2]

II.    DISCUSSION

A.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[1]From a review of the documents provided by Plaintiff (Docs. 51, 52, 53), it appears Plaintiff considers his suspension to be the initiation of termination proceedings against him, although Defendant maintains he was merely temporarily suspended.

[2]Defendant argues summary judgement is appropriate for two reasons: 1) no adverse employment action occurred, and 2) Defendant's stated reason for Plaintiff's suspension was not pretextual (Doc. 37). Therefore, the court had summarized only those facts pertinent to these issues.

of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  "[T]he substantive law will identify which facts are material" and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  *See id.*

At the summary judgment stage, a court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists for trial.  *See id.* at 249, 106 S. Ct. at 2510–11.  A genuine issue exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party.  *See id.*  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust Co. v. Fidelity and Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party."  Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993).  The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative."  Anderson, 477 U.S. at 249–50, 106 S. Ct. at 2511.  "A mere 'scintilla' of evidence supporting the . . . [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment.  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 252, 106 S. Ct. at 2512).

B.  Disparate Treatment

In pertinent part, the ADEA states that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ."  29 U.S.C. § 623(a).  The disparate treatment theory of employment discrimination is available under the ADEA.  Hazen Paper Co. v. Biggins, 507 U.S. 604, 609, 113 S. Ct. 1701, 1706, 123 L. Ed. 2d 338 (1993).  In a disparate treatment case, liability depends on whether the protected trait (age) actually motivated the employer's decision.  *Id.*  There is no disparate treatment when the

factor motivating the employer is some feature other than the employee's age.  *Id.*

To establish a prima facie case of disparate treatment, a plaintiff has the initial burden of showing by a preponderance of the evidence that: (1) he belongs to a protected class; (2) he was subjected to adverse employment action, (3) his employer treated similarly situated employees outside his classification more favorably, and (4) he was qualified to do the job.  Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999); Texas Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).   If plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory explanation for the adverse action.  *See* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973).  If the employer does so, the burden shifts back to the plaintiff and merges with the ultimate burden of persuasion, which "remains at all times with the plaintiff," and the plaintiff must "prove that the proffered reason [offered by the defendant] was not the true reason for the employment decision," but was a pretext for discrimination.  Texas Dep't. of Cmty. Affairs, 450 U.S. at 253-55, 101 S.Ct. at 1093-94.  A plaintiff can meet the burden of proving that defendant's stated reason was pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Id.*, 450 U.S. at 256, 101 S.Ct. at 1094.

Summary judgment is appropriate if the plaintiff fails to "introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination."  Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993) (citation omitted).  "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance."  Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir.1997) (citations omitted).  This inquiry requires the court to, "in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'"  Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th  Cir. 1997) (quoting Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 605 (11th Cir. 1994) (citation omitted)).

In the instant case, Defendant contends Plaintiff has failed to establish a prima facie case of disparate treatment, specifically asserting that Plaintiff failed to show that an adverse employment

action occurred because Plaintiff's "alleged suspension was <u>with</u> pay, and was temporary" and "did not affect his compensation or other employment benefits" (Doc. 37 at 2; Doc. 39 ¶ 13).  Plaintiff, however, alleges that he was "constructively" demoted and terminated (Doc. 10 ¶ 42), and states in an affidavit that he was "denied several thousand dollars in monies, measurable in U.S. Dollars for approximately 52.5 hours of work at a rate of approximately $60-80.00/hour, based on [his] salary, the type of aircraft [he] would fly and seniority" and "was denied medical compensation for [his] family for which [he] was eligible, and which would have been paid if [he] had been credited as being on active duty" at the time of his suspension (Doc. 52 ¶¶ 29, 30).

However, the court need not decide whether an adverse employment action occurred, as it is clear that Plaintiff cannot carry his ultimate burden of persuasion.  Assuming Plaintiff established a prima facie case of disparate treatment, the court must decide whether Defendant has articulated a legitimate nondiscriminatory reason for Plaintiff's suspension, *see* <u>Holifield</u>, 115 F.3d at 1564, keeping in mind that Defendant's burden at this stage is "exceedingly light."  *Id.* (citing <u>Turnes v. AmSouth Bank, N.A.</u>, 36 F.3d 1057, 1061 (11th Cir. 1994)).  Defendant has fully met its burden in this case.

Defendant states that on February 20, 2003, it temporarily suspended Plaintiff from flight status pending a "fitness for duty" determination due to five complaints it received from Plaintiff's coworkers, which raised concerns about Plaintiff's fitness to serve as a pilot (Doc. 39 ¶¶ 5, 6, 13). In support, Defendant submitted an affidavit of George Semak, Senior Director of Flight Operations, and attached copies of the complaints reported by Plaintiff's coworkers (Doc. 39).[3]

An ExpressJet pilot, Captain William Haines, submitted a complaint regarding Plaintiff's "lack of ability to accept input" and his creation of an "unsafe cockpit environment." (Doc. 39 ¶¶ 7-8; Ex. A).  Captain Haines' complaint noted an incident where Plaintiff ignored his suggestions en route to a departure runway causing Captain Haines to repeatedly yell "Stop!" to ensure they did not cross an active runway (Doc. 39, Ex. A.).  Captain Haines also described a headwind landing situation where he feared for the safety of the flight due to Plaintiff's slow response, and stated that for the first time in "almost 2 years of flying as a Captain," he felt the need to "grab the controls"

---

[3]Plaintiff filed a motion to strike the exhibits, asserting that they are deficient, improper, and irrelevant (Doc. 51).  However, Plaintiff's motion was denied (*see* Doc. 59).

during Plaintiff's operation of the aircraft because he was "scared for the safety of the flight," crew, and passengers (*id.*). Captain Haines continued:

> After vacating the runway Captain Mihalik commented on the challenging conditions and the "work" required to land the aircraft. In my estimation these conditions were not overly demanding and should be considered routine for a professional pilot, Captain, or First Officer. I would not feel safe with Captain Mihalik at the controls when conditions really do require the skill of a professional pilot.

*Id.* Captain Haines' complaint further describes incidents of Plaintiff's "rude and condescending manner" toward the ground crew and Plaintiff's "poor comprehension of the situation and poor decision making" regarding a fueling operation (*id.*). At first, Captain Haines "chose to keep [his] mouth shut" and attempted to "bid around" Plaintiff's schedule (*id.*). However, when asked if he would feel comfortable if his own family flew on Plaintiff's aircraft, he felt guilty and decided to report Plaintiff's actions (*id.*). He did so on February 17, 2003, three days before Plaintiff's suspension (*id.*).

Todd Weller, a general manager for the airline, submitted a complaint via e-mail on November 19, 2002 regarding Plaintiff "forgetting" the location of flight operations on two occasions (Doc. 39 ¶ 9, Ex. B). According to Mr. Weller, on each occasion Plaintiff called dispatch to complain until an agent assisted him in determining where to go (*id.*). Plaintiff's actions prompted Mr. Weller to advise his (Mr. Weller's) supervisors "to keep close tabs on [Plaintiff]" (*id.*). Mr. Weller's e-mail also included the complaint of another ExpressJet employee, Janet Hartman, discussing Plaintiff's "displeasure" and "anger and frustration" at a double security check prior to a scheduled departure (*id*)

Flight Officer ("FO") Lundgreen submitted a complaint regarding an incident that occurred on February 9, 2003 (Doc. 39, Ex. D). FO Lundgreen related that Plaintiff became upset with a flight attendant and was "arguing very loudly" in front of passengers about whether she was required to serve him food or beverages prior to takeoff, despite her more pressing responsibilities, especially considering the fact that the flight was somewhat late (Doc. 39 ¶ 11; Ex. D). A corroborating complaint was submitted by the flight attendant, Geraldine Rivers (Doc. 39 ¶ 11, Ex. E).

Finally, Defendant received a report about Plaintiff "deploying engine thrust reversers to

stop the aircraft while taxiing," and then leaving them open until taxiing resumed,[4] which is forbidden by ExpressJet's Aircraft Operations Manual (Doc. 39 ¶ 12, Exs. F, G).  The operations manual specifically states that thrust reversers are "intended for use during rejected takeoff or landing only" (*id.*, Ex. G).

An employer's good faith belief that an employee's performance is unsatisfactory constitutes a legitimate nondiscriminatory reason for suspension.  *See* Clark, 990 F.2d at 1228.  Based upon the above complaints, Defendant's "serious concerns . . . about [Plaintiff's] fitness to serve as a pilot of ExpressJet's aircraft" were certainly well-founded (Doc. 39 ¶ 6).  The complaints support a finding that Defendant, in good faith, believed that Plaintiff's job performance was unsatisfactory.  Thus, Defendant has met its burden of articulating a nondiscriminatory reason for Plaintiff's suspension.

Accordingly, the burden shifts back to Plaintiff to prove Defendant's stated reason was a pretext.  To meet this burden and avoid summary judgment, Plaintiff must introduce significantly probative evidence showing that Defendant's asserted reason is merely a pretext for discrimination based on Plaintiff's age.  Clark, 990 F.2d at 1228; Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991).  Plaintiff can meet this burden by "showing that a discriminatory reason more likely than not motivated the employer's decision, or by discrediting the employer's proffered explanation."  Clark, 990 F.2d at 1228.  Stated another way, once the employer succeeds in carrying its intermediate burden of production, the ultimate issue in the case becomes whether Plaintiff has proven that the employer intentionally discriminated against him because of his age.  Holifield, 115 F.3d at 1565.

In Plaintiff's response in opposition to Defendant's motion for summary judgment, he makes numerous and varied attempts to establish that Defendant's stated reason was pretextual (Doc. 53).  Additionally, Plaintiff refers the court to his motion to strike the exhibits attached to George Semak's affidavit (Doc. 51), filed by Plaintiff in conjunction with his response in opposition to the motion for summary judgment, which is thirty-one (31) pages in length, as well as Plaintiff's

---

[4]This incident was reported by Captain C.J. Ferrell, a pilot in another aircraft, who was following Plaintiff's aircraft to a runway on December 13, 2002 (Doc. 39, Ex. F).  Captain Ferrell specifically noted that Plaintiff's aircraft used both reversers to slow down and stop, and that they remained open until taxiing resumed (*id.*).

affidavit in support of the motion to strike, which contains Plaintiff's affidavit, eighteen attachments, and is seventy-five (75) pages in length (Doc. 52).  However, despite Plaintiff's valiant effort, he has failed to establish that Defendant's action constituted intentional discrimination on the basis of his age.

Initially, Plaintiff takes issue with the statement in Mr. Semak's affidavit that employee complaints were the basis for scheduling a "fitness for duty examination . . . to review [Plaintiff's] *performance* and conduct in this regard" (Doc. 53 at 4; Doc. 39 ¶ 6).  Plaintiff asserts that this statement is false because Mr. Semak scheduled "a fitness for duty examination to review [Plaintiff's] *medical condition*, related to abusive behavior, not his *performance*" (Doc. 53 at 4).  Plaintiff asserts that "this attempt by Mr. Semak to change the fundamental nature of this litigation" is evidence of pretext (*id.*).

Plaintiff also contends that the employee complaints, if taken as true, fail to describe any abusive acts or violations of law or company policy that justified initiating termination proceedings (*id.* at 4-5).  He further contends that Mr. Semak knew this, but misquoted and misrepresented the complaints to the court in an attempt to create the deception that the complaints were a valid reason to think he had abused his coworkers or was not performing at the appropriate level (*id.* at 5).  Plaintiff contends this is further evidence of pretext (*id.*).

Additionally, Plaintiff asserts that the letter informing him of his suspension stated that the reason for his suspension was abuse of his coworkers due to a medical problem, but Defendant informed the EEOC that Plaintiff's failure to perform was the reason for his suspension (*id.* at 6).  Plaintiff asserts that Defendant's inconsistency regarding the reason for his suspension is evidence of pretext (*id.* at 6-7).

Next, Plaintiff alleges that Defendant's failure to immediately notify him if they thought he was abusive, suffered a mental impairment, or was chemically dependent is evidence of pretext (*id.* at 8).  Plaintiff also alleges Defendant's determination to "pursue the termination proceeding, beginning with the Fitness for Duty Examination" prior to an impartial hearing to determine whether Plaintiff merited a fitness for duty evaluation is evidence of pretext (*id.* at 8).

Plaintiff further alleges that Defendant "essentially lied" to the court when it denied paragraph 23 of the complaint, which states, "Defendant had already decided at least two weeks

prior to the hearing . . . to require Plaintiff to submit to a fitness for duty medical evaluation," and paragraph 43, which alleges that Defendant's agent "stated that Plaintiff was not entitled to HIPAA protection of his medical records because (a) Plaintiff is a pilot; (b) ExpressJet initiated the proceedings; (c) ExpressJet anticipated litigation by Plaintiff' (Doc. 10 ¶¶ 23, 24; Doc. 53 at 8). Plaintiff contends that Defendant's "lies" are evidence of pretext (Doc. 53 at 8).

Finally, Plaintiff contends that the contents of Mr. Haines' complaint were merely "opinions, speculations, and impossible events"(Doc. 52 ¶ 21), and that nothing in Mr. Lundgreen's complaint constituted abuse (Doc. 52 ¶ 22). Plaintiff also states that during a hearing on March 4, 2003, Mr. Semak responded to a statement Plaintiff made about his experience as a pilot by "muttering something about '. . . lucky old guys.'" (Doc. 52 ¶ 21).[5]

Upon a careful review of Plaintiff's submissions, this court concludes that Plaintiff has failed to introduce significantly probative evidence showing that Defendant's asserted reason for suspending him (i.e., complaints from coworkers) is merely a pretext for discriminating against him on the basis of his age. Plaintiff produced no evidence demonstrating that his employer's actions were related in any way to his age. Indeed, although Plaintiff alleged in his complaint that he is over the age of forty, that his seniority status is based upon his age, and that employees with seniority status are more expensive for Defendant to maintain as employees (Doc. 10 ¶¶ 7, 8, 49, 50), he has failed to establish that his age played any role in his employer's decision. In fact, this court has found no mention of age anywhere outside the complaint, except the statement allegedly muttered by Mr. Semak, which is not significantly probative as Plaintiff did not hear the entire statement and does not know exactly what was said by Mr. Semak. Moreover, although complaints were made about Plaintiff in 2002 and in January 2003, ExpressJet took no action until February 20, 2003, three days after a coworker reported that Plaintiff, on two occasions, seriously endangered the lives of those onboard his aircraft. In this court's opinion, ExpressJet would have been remiss had they not acted on the complaints of Plaintiff's coworkers.

III.     CONCLUSION

---

[5]This court has not attempted to discuss every response set forth by Plaintiff, as many are duplicative, irrelevant to the issues before the court, or difficult to comprehend.

Because Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's suspension, and Plaintiff has not come forward with significantly probative evidence showing that Defendant's reason is pretextual, summary judgment is warranted.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Defendant's Motion for Summary Judgment (Doc. 37) be **GRANTED**.

2.      That judgment be entered by the clerk in favor of Defendant.

At Pensacola, Florida this 2nd day of March 2006.


_/s/ Elizabeth M. Timothy_____
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** United States v. Roberts**, 858 F.2d 698, 701 (11th Cir. 1988).**